# THE CITY OF CHICAGO

## v.

# HENRY M. SHEPARD.

1. WIDENING STREETS—CONDEMNATION—SUIT FOR ASSESSMENT.—In order to maintain a suit for an assessment for benefits made by virtue of condemnation proceedings for opening streets, the party suing must show: first, title in fee in himself to the portion of the lot sought to be condemned; second, a regular judgment in his favor, ascertaining the amount of compensation; and third, the taking possession of the portion condemned, by the defendant, with the consent of the plaintiff.

2. DEED TO CONDEMNING PARTY.—In the case of cities condemning property for public use, the statute makes no provision for the giving by the lot owner or acceptance by the city of a deed of the property sought to be condemned, and the municipal officers have no authority to accept such a deed. The acceptance of a deed, therefore, by the officers of the city, is not evidence of a taking possession such as will, under the above rule, authorize the lot owner to bring suit for the compensation awarded.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed June 14, 1881.

March 17, 1873, an ordinance was passed by the city of Chicago for the opening and extension of Dearborn street south of Jackson to Fourteenth street and for the condemnation of the land requisite for that purpose; and also that the expense and cost of the improvement be paid by special assessment of property thereby benefited. The lines of the proposed improvement included a large number of different parcels of land owned by different persons among which was lot 6 in block 122 school section addition to Chicago belonging to the plaintiff Shepard. August, 1873, the city, under act 9 of the general corporation act for cities and villages and said ordinance, filed its petition in due form in the Superior Court for the purpose of having the compensation ascertained to the several lot-owners, for the property to be taken or damaged for such improvement, making Shepard, amongst the other property owners, a party. Such proceedings were had that amongst other things, the jury awarded to Shepard as compensation for

a part of said lot 6, the sum of thirty-nine thousand seven hundred and twenty dollars for which amongst others judgment was given April 23, 1874.

Afterwards, April 24, 1874, the city presented its petition in due form to the said court, and under the said ordinance proceeded to have said special assessment made, for the purpose of paying for such improvement with the costs, and such proceedings were, amongst others, had that the sum of ten hundred and seventy-seven thousand eight hundred and seventy-four dollars and sixty-six cents was assessed upon the property benefited and forty-four thousand one hundred and thirty-six dollars eighty-seven cents directed to be paid by general taxation, and against the west half of said lot six, there was assessed the sum of thirty hundred and twenty-nine dollars and sixty cents as benefits, which assessment was confirmed by order of said court June 5, 1875. November 16, 1876, a warrant in due form was issued, for the collection of such assessment and placed in the hands of the collector of said city; that a considerable sum said to be one hundred thousand dollars in the aggregate was collected from divers persons, and Shepard paid the amount assessed against the west half of said lot 6. About the first day of March, 1878, another warrant was issued to the said collector and other sums collected thereunder of property owners assessed as aforesaid; and in June, 1878, the city withdrew said warrant and by ordinance of the city council abandoned the collection of said assessment.

Shepard brought suit to the November term of the circuit court against the city of Chicago, to recover the amount so awarded him as compensation as aforesaid. The action is assumpsit upon the special facts before mentioned, and the further ground that the city had taken possession of the portion of said lot 6 so condemned. The declaration alleges that, December 29, 1877, the plaintiff, Shepard, sold and conveyed said lot six, subject to the rights of the city of Chicago, to Charles C. Copeland, and assigned to him said award, for whose use this suit is brought.

There was a trial by jury under the plea of non-assumpsit. The plaintiff gave in evidence the several matters of induce-

ment set out in the declaration; evidence of his title to said lot six at the time of the condemnation proceedings and down to the time of the conveyance to Copeland; and the judgment in the condemnation proceedings; but gave no evidence tending to show that the defendant corporation, or any of its authorized agents or officers, had taken possession of any portion of that part of said lot six which was involved in said condemnation proceedings. The plaintiff, however, was permitted by the court, against the objections of the defendant, to give evidence tending to show that, in June, 1877, he together with his wife signed and acknowledged a deed of conveyance to the defendants of that portion of said lot which had been so condemned as aforesaid, and caused it to be delivered to the comptroller of the city of Chicago, but which had never been placed of record, and could not be found in the comptroller's office or elsewhere.

The court, at the instance of the plaintiff, gave to the jury the following instruction:

"The jury are instructed that as matter of law the improvement or extension of Dearborn street mentioned in the plaintiff's declaration, filed in this suit, constitutes an entire and indivisible improvement: that is to say, that the question of compensation ascertained in the proceedings had under the ordinance providing for said improvement was, what compensation should be paid for the taking or damaging of property, necessary to be taken or damaged, for the purpose of extending Dearborn street from Jackson street to Fourteenth street, and not for a part of the distance only; and the question of the assessment of the cost of said improvement upon property specially benefited thereby, was, as to what property would be specially benefited by said street extension throughout its entire length, and not a part of the way alone. If therefore the jury believe from the evidence, that the city of Chicago has, under said ordinance and the proceedings had thereunder, and with the consent of the owners, taken and retained actual possession of the property or a material part of the property sought by said ordinance to be taken for the purposes of said street extension, subsequent to the ascertainment and fixing of

the compensation to be paid owners therefor, with the intention on the part of said city to actually appropriate the property so taken possession of to the uses of said improvement or street extension, and if the jury further believe from the evidence that the said city, in the course of the proceedings had under and by virtue of said ordinance, did after the confirmation of the assessment made to cover the cost of said improvement, by the judgment of the Superior Court of Cook county, entered on June 5, 1875, issue its warrant or warrants for the collection of said assessment, and did in fact, collect and receive on said warrants, from the owners of property specially assessed for said improvement, including the plaintiff, all or a part of the sums assessed as aforesaid, and thereafter wholly abandoned all intention and effort to make further collections of said assessments, then the jury should find for the plaintiff."

To the giving of which, defendant's counsel then and there excepted.

The defendant's counsel then asked the court to give to the jury the following instruction:

" The jury are instructed that by the ordinance in evidence, ordering the extension and opening of Dearborn street from Jackson street to Fourteenth street, it was and is provided that the cost thereof should be paid for by a special assessment; that it is admitted by the parties to this suit that a special assessment to pay such cost, including the compensation awarded for the property proposed to be taken for the improvement, was made in conformity with the provision of said ordinance and was confirmed by the Superior Court of Cook county June 5, 1875, and that warrants were issued for the collection of said assessment; and the jury are instructed that, by the statute, the city has five years from the date of the confirmation of the assessment, namely, from June 5, 1875, in which to collect the same, and that this suit having been commenced November 9, 1878, before the expiration of the said five years, the plaintiff cannot recover in this action, even though the improvement has not been abandoned, and the jury should find for defendant."

But the court refused the said instruction as asked, and modified the same by adding to the same, immediately after and following the last word thereof, to wit: the word "defendant" the following words, to wit: "*Unless the jury believe, from the evidence, that the city actually took and retained, with the plaintiff's consent, possession of that part of the lot of plaintiff which was condemned, or other of the lots so condemned, with consent of the owners thereof, and with the intention of carrying out the improvement.*"

And the court gave to the jury the said instruction, modified as aforesaid.

To the refusal to give said instruction as asked, and so modifying the same, the defendant's counsel then and there excepted.

The jury found for the plaintiff, assessing his damages at $35,982.31. The defendant made a motion for a new trial, which was overruled by the court, and the defendant prosecutes this appeal.

Mr. FRANCIS ADAMS, for appellant; that acceptance of a deed by the city comptroller would be *ultra vires*, cited Chicago v. Barbian, 80 Ill. 482; Dart v. Hercules, 57 Ill. 446; Dillon on Mun. Corp. § 381.

Mr. JOHN P. ALTGELD, for appellee; that condemnation proceedings when perfected constitute a purchase of the land, cited Mills on Eminent Domain, § 124; *In re* Phinebick, 67 N. Y. 245; Neal v. Pittsburg, etc., R. R. Co. v. Grant Cas. Pa. 138; Trustees v. Hawkins, 1 Wend. 53; Town of Hampton v. Coffin, 4 N. H. 517; Philadelphia v. Dickson, 38 Pa. St. 247.

No actual taking is necessary to fix the rights of the parties: Rigney v. Chicago, 13 Chicago Legal News, 229.

The giving of vouchers by the city to lot owners, was an assignment of a part of the special assessment, and the holder of a voucher was *pro tanto* the owner of said assessment: Springfield v. Edwards, 84 Ill. 633; Law v. The People, 87 Ill. 399; Fuller v. Heath, 89 Ill. 308.

When the city failed to proceed with the collection of the special assessment, it became liable to appellee upon the im

lied assumpsit to collect and pay the amount awarded : Wheeler v. The City, 24 Ill. 107; The People v. Mayor, etc., 23 Wend. 685; Argenti v. San Francisco, 16 Cal. 258; Dillon on Mun. Corp. § 479.

McAllister, P. J.  Looking beyond the mere matters of inducement to the real cause of action, and some that are mere surplusage contained in plaintiff's declaration, we find that the essential elements of such cause of action, and upon which alone a recovery can be had, if at all, are (1), a good title in fee in himself at the time to the portion of his lot which the defendant sought to have condemned for public use; (2), a regular judgment in his favor of a court of record of the county, ascertaining the amount of compensation to be paid him for the portion of said lot so sought to be condemned; and (3), the taking and retention of the possession by the defendant of such portion of said lot, after such judgment, with the consent of the plaintiff.  The cause of action does not spring from such judgment alone, but from the concurrence of all of the above elements or ingredients; because it is perfectly well settled in this State that the usual judgment authorized by the statute, which is the kind here, is not absolute, but conditional only; that therefore, the court rendering it cannot award an execution upon it, unless the jury find, or it is clearly established in the record, that the applicant for condemnation had before judgment actually appropriated the property sought to be condemned, by taking and retaining possession of it:  St. Louis & S. E. R'y Co. v. Teters, 68 Ill. 144.

It has likewise been decided that mandamus, upon the relation of the property owner, will not lie against the condemning corporation to compel the payment of the amount in the judgment, unless it be made to appear that such corporation has already appropriated the property by taking and retaining the possession of it with the owner's consent, express or implied.  City of Chicago v. Barbian, 80 Ill. 482.  In that case the court, by Mr. Justice Scholfield, after quoting the provisions of the statute as to the effect of the judgment, and the manner of carrying the condemnation into full execution, says:

" This would clearly seem to indicate, first, that the judgment to be rendered on the verdict of the jury is conditional, and is to be a sufficient judgment of condemnation only when payment shall be made of the amount of the finding; and, second, that no right, either to take or damage the property, shall vest in the applicant for condemnation until such payment shall have been made. Until then, the owner is entitled to the absolute control and use of his property, and he cannot be deprived thereof until the order shall be made as prescribed by section 15, on proof being made of payment, etc., as therein provided.

The compensation to be made is for "*property taken or damaged*," and no property shall be taken or damaged until compensation shall be made. The rights of the parties are correlative, and have a reciprocal relation—the existence of the one depending on the existence of the other. When the party seeking condemnation acquires a vested right in the property, the owner has a vested right in the compensation; but since no vested right can be acquired in the property without the owner's consent, until compensation shall be paid, it must follow there can be no vested right in the compensation until after the amount is paid. Of course, if, by the owner's consent, either express or implied, the property is taken or damaged before compensation is made, the owner has a vested right in the compensation." The same doctrine is re-affirmed in South Park Com'rs v. Dunlevy, 91 Ills. 56. Beveridge v. West Park Com'rs, 7 Bradwell, 460.

It is the settled law in this State, that the applicant for condemnation may, at any time before payment of the compensation, or the appropriation of the property by taking and retaining possession, discontinue and abandon the improvement and all proceedings to carry it into effect. St. L. & S. E. R. v. Teters, 68 Ill. 144; Chicago v. Barbian, *supra;* The Village of Hyde Park v. Dunham, 85 Ill. 570.

On the trial, the plaintiff, not being able to prove that the defendant, by any person or persons duly authorized for that purpose, had taken and retained possession of any portion of his lot, shifted his ground as to that branch of his case; and

City of Chicago v. Shepard.

the court permitted him, against the objections of the defendant, to introduce evidence tending to show that, in June, 1877, he and his wife signed and acknowledged a deed to the city of that portion of his lot sought to be condemned, in due form, and that the same was delivered by plaintiff to, and accepted by, the comptroller of the city.

That evidence was, in our opinion, clearly inadmissable, for two reasons: First, the plaintiff was bound to count upon those special facts, in his declaration, from which the law would give him a vested right in the compensation so ascertained, and from which a promise to pay it would be implied on the part of defendant. Nothing of the kind was alleged. Secondly, while it may be conceded, that if a private corporation, such as a railroad company, and competent to contract in this way, had stood in the place of this municipal corporation, such a deed and acceptance would have conferred upon plaintiff an immediate vested right in such compensation, yet the defendant's position is entirely different. It is organized and acting under the general incorporation act of 1872, which specifically defines all its powers and faculties, and the condemnation proceeding was under Article IX (R. S. 1874, p. 232), which affords a complete system, and specifies each step to be taken. There can be found no statute requiring any property owner, in such case, to give a deed, or the city or any of its officers to accept one. Such authority, if assumed, would enable such officers not only to embarrass the execution of the system provided for making local improvements, but to thwart, defeat, and entirely subvert it.

The first section of Article IX vests the corporation with power to make local improvements by special assessment, or special taxation, or general taxation, or all these means, as the corporation shall by ordinance provide. Then, the second section declares: " When any city, etc., shall, by ordinance, provide for the making of any local improvement, it shall, by the same ordinance, prescribe whether the same shall be made by special assessment, or special taxation of contiguous prop erty, or general taxation, or both." The subsequent sections prescribe specific methods to be pursued under each of the

above heads; and the whole, taken together, furnishes the the remedy, so far as the property owner is concerned as to his compensation for property taken or damaged for public use. It is the established rule, that such remedy is exclusive; and, of course, amounts to an implied prohibition of any other, so long as that prescribed is achered to. Smith v. Railroad Co. 67 Ills. 191; Mills on Em. Dom. Sec's, 87, 88, and cases in notes.

That remedy was pursued by both the city and the property owners. The point of inquiry is whether it lay in the power of the property owners and the comptroller to defeat and subvert that remedy, and substitute another and different one.

The doctrine is elementary, that such municipal corporations possess no powers or faculties not conferred upon them expressly, or by fair implication, by the law by which they are created, or other statutes applicable to them. This rule is one of frequent recognition in this State. Town of Petersburg v. Metzker, 21 Ill. 205. In City of Springfield v. Edwards, 84 Ill. 634, the court, by Mr. Justice Scholfield, says: "Those representing the city can exercise only such powers in its name and on its behalf, as are expressly conferred by its organic laws, or as are incidental and necessary to carry into effect the objects of the incorporation. Much less can any power be exercised or act done which is prohibited by statute." See also the opinion of Chief Justice Shaw, in Spalding v. City of Lowell, 23 Pick. 71; Dillon on Mun. Corp. (1st ed.), Sec. 55, and cases in notes.

These rules are the deductions of wise and able jurists, from the most salutary principles of social and municipal law. and their necessity and importance for the protection of tax-payers and minorities, have been amply demonstrated by experience in almost every city of consequence in the land.

The ordinance for the improvement provided that the cost of it should be paid by special assessment of property benefited thereby. Such an assessment was made. The whole cost was found to be eleven hundred and twenty-two thousand and eleven dollars; all of which vast sum, except about eight thousand dollars, was required for the compensation to be made to the several property owners.

It must be borne in mind that these judgments in the condemnation proceedings, none of them, created any absolute liability on the part of the city; of themselves they constituted no debt; no execution could be issued upon them; no writ of mandamus would lie to enforce payment, nor action of debt be maintained upon them. From this, it follows that any act between the plaintiff and the comptroller which would give the former a vested right in the amount of the condemnation judgment in his favor, and an immediate right of action against the city to recover the same, must necessarily be *tantamount to the creation of a debt*—the incurring of a liability *ex contractu.* A deed is a contract, a parting with property by the grantor, and an acceptance thereof by the grantee: Jackson v. Bodle, 20 Johns, 184. And it is necessary to the validity of a deed that there be a grantee not only willing to accept it, but capable in law of taking the estate in that way. Jackson v. Phipps, 12 Johns, 419.

The city of Chicago could not, under said Article IX, have made this improvement by acquiring the property necessary for that purpose, by means of private contracts with property owners. Such a practice would inevitably lead to favoritism and corruption. Hence the statute has prescribed a specific manner of acquiring such property; and, by the rules of construction it impliedly forbids the thing being done in any other way. The powers of the comptroller are carefully defined in section 104 (R. S. 1874, p. 229), but there is none authorizing him to enter into contracts or accept deeds with or from property owners in such cases. Then, Section 89 requires the city council in the first quarter of each fiscal year to pass an appropriation bill covering every expense or liability of the corporation to be paid during such year. Section 91 prohibits all contracts and the incurring of any liability on the part of the corporation, unless an appropriation therefor shall have been previously made. Chicago v. Shoberville, etc. Co. 6 Bradw. 560.

Then, superadded to all these is the constitutional limitation as to the corporation becoming indebted.

Now it seems to us very clear that if the comptroller could

legally accept a deed from Shepard, the plaintiff, and thus by contract give him an immediate absolute right to the amount of compensation to him ascertained by the condemnation proceeding, he could do so as to each one of the other property owners so situated; and if he could have legally thus contracted with the plaintiff in June 1877, then there being no guide for him but his own discretion, he could have done so with the plaintiff and each of the other property owners in question on the 24th day of April, 1874, the very next day after the judgments in the condemnation proceeding were entered. Therefore, according to the theory of the plaintiff below, this single officer—the comptroller, whose powers are carefully defined by the statute, and include nothing of this sort—in some mysterious way possessed a power which would enable him not only to defeat and subvert the system prescribed by the statute for acquiring private property for local improvements, and the manner in which compensation should be provided, but by his sole act to create an absolute liability on the part of the city, where none before existed, so as to subject the corporation to an action *ex contractu* immediately upon the entering of the judgments in the condemnation proceeding, in which action a personal judgment may be had against the city to be enforced like all other such judgments; and thus, in fact, create an absolute indebtedness against the city, which might, in this case, amount to over a million dollars. This too, perhaps, in excess of the constitutional limitation as to indebtedness, and certainly, without any previous appropriation having been made for any part of it. Such a proposition is too absurd and monstrous to receive judicial sanction; and the court below very properly directed the jury that the comptroller could not, by accepting such deed, thereby increase the liability of the city. Still the evidence was before the jury, and they must have considered it in their verdict. The instruction did not cure the error. Lafayette B. & M. R. v. Winslow, 66 Ill. 219; Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402.

The court below, in effect, instructed the jury that if the city took and retained possession, with the consent of the respective

owners thereof, of property other than that of the plaintiff, such act would make the city liable to the plaintiff for the amount of compensation to him ascertained by the condemnation proceedings.    We think that was error for two reasons, at least.    First, if such taking and retention of possession by the city, of the property of others constituted an ingredient of the cause of action, it should have been alleged in the declaration; but it was not.    Secondly, as the rights of the respective property owners were several and distinct as to the property, so were they as to the amount of compensation.    We can conceive of no principle of law by which one such property owner could be affected, either favorably or unfavorably, by any thing done between the city and another property owner, in which the former had no participation.

For the errors indicated the judgment of the court below must be reversed, and the cause remanded.

Reversed and remanded.