## City of Chicago, Appellee, v. Harry S. Megartney, Appellant.

### Gen. No. 16,969.

1. COURTS—*stare decisis*. Where a petition is filed in a condemnation suit (brought by a city for the opening of a street) asking for a judgment against the city for the amount of the unpaid awards on the theory that the power of the city to levy and collect a special assessment has been exhausted, such contention cannot be sustained where at the time action is begun a suit was pending in the Supreme Court which subsequently sustained such special assessment.

2. MUNICIPAL CORPORATIONS—*eminent domain*. Where condemnation awards are required by ordinance to be paid by special assess-

ment to the extent of benefits and the remainder by general taxa-
tion, this method of payment must be followed, and until it is
shown that the city has exhausted its power to assess for benefits,
no judgment can be entered against the city in the condemnation
proceeding for any such remainder.

3.  CITIES AND VILLAGES—*condemnation.* ˙ Where condemnation
awards are to be paid by special assessments to the extent of bene-
fits and the remanider to be paid by general taxation, judgment
cannot be entered against the city for such remainder where the
special benefits have not been determined.

4.  MUNICIPAL CORPORATIONS—*condemnation awards.*  A judgment
cannot be entered against a city for the amounts of condemnation
awards to be paid by special assessments although payment was
delayed seventeen years through lack of diligence in collecting such
special assessments.

Appeal from the Circuit Court of Cook county; the Hon. MERRITT
W. PINCKNEY, Judge, presiding.  Heard in the Branch Appellate
Court at the October term, 1910.  Affirmed.  Opinion filed October
3, 1912.  Rehearing denied October 17, 1912.

RICHARD W. CLIFFORD, ENOCH J. PRICE and EVERETT
M. SWAIN, for appellant; EVERETT M. SWAIN, of
counsel.

GEORGE A. MASON and EDGAR R. HART, for appellee;
EDWARD J. BRUNDAGE, of counsel.

MR. JUSTICE FITCH delivered the opinion of the
court.

In July, 1893, the City Council of the city of Chicago
passed an ordinance providing for the opening and
widening of South Park avenue between Garfield boule-
vard and Fifty-sixth street by condemning the east
thirty-seven feet of three lots owned by appellant and
others.  One section of the ordinance provides that
"said improvement shall be made and the cost thereof
paid for by special assessment to be levied upon the
property benefited thereby to the amount that the same
may be legally assessed therefor, and the remainder
of such cost to be paid by general taxation, in accord-
ance with Article 9" of the City and Village Act of

1872. In pursuance of the provisions of that act a petition was filed in the Circuit Court, praying that the just compensation to be awarded to the several owners and parties interested in the property proposed to be taken or damaged for said improvement be ascertained by a jury. Separate trials were had and verdicts rendered finding the aggregate value of the several tracts required to be taken for the improvement to be $19,499.88, and in June and October, 1894, judgments were entered on the verdicts. These judgments, after reciting the several amounts awarded by the jury as just compensation for the parcels of land proposed to be taken, provided "that upon payment to the county treasurer of Cook county, Illinois, of the said several sums of money for the use of the owner or owners of any or each of the said lots," or upon proof made of payment of the same to such owners, "the city of Chicago shall have the right at any time thereafter to take possession of and damage the property in respect to which such compensation shall have been so paid or deposited." Later, appellant became the owner, by assignments filed of record, of all of the awards included in the several judgments. Pending these proceedings, by an agreement between the city and land owners, the city was allowed to take possession of the tracts needed for the opening of the street, to lay water pipes therein and to pave the street, upon the understanding that the city would proceed with the pending condemnation and special assessment proceedings, to ascertain the value of the land taken and to collect the amount of benefits accruing therefrom.

In December, 1894, the city filed a supplemental petition under Section 53 of Article 9 of the City and Village Act, praying that a special assessment be levied to raise the amount necessary to pay the awards. Under this petition an assessment was made and returned for the full amount of such awards and costs, apportioned among the lots and parcels of property

alleged to be benefited. A large part of the whole assessment was levied upon the parts of the land owner's lots which remained after taking the east thirty-seven feet thereof for the street. To this assessment objections were filed and sustained by the court. A second assessment proceeding was begun in 1895, which after several trials upon objections filed thereto, was dismissed by the city in February, 1897. A third supplemental petition and assessment followed, to which objections were filed by appellant and others. In July, 1898, this third assessment was confirmed as to all property except appellant's, and the amount thus confirmed, $12,033.74, except $1,885, was paid from time to time, as collected, to the owners of the land taken. The item of $1,885 was contested by the owner of the land against which it was assessed and such contest was not finally determined until the Supreme Court in 1903 sustained the assessment as to the property there involved. Bass v. People, 203 Ill. 206. Notwithstanding this favorable decision, the city made no attempt to enforce the collection of this item of $1,885 for nearly seven years thereafter.

As to appellant's objections to the third assessment, a trial was had in 1898 resulting in a verdict which reduced the assessment against his property about $2,300. The city was granted a new trial, and nothing further seems to have been done until June, 1901, when the court sustained appellant's objections on the ground that the question of benefits to the remainder of appellant's lots had been adjudicated in the original condemnation proceedings. Three years later, in 1904, the city sued out a writ of error from this judgment, and the Supreme Court, in 1905, reversed and remanded it. City of Chicago v. Mecartney, 216 Ill. 377. For some unexplained reason, no remanding order was filed in the Circuit Court within the statutory two years.

Meantime, in November, 1895—thirteen months after

the condemnation judgments were entered—appellant and two others of the land owners had brought suits in *assumpsit* against the city to recover the amounts of their awards. In these suits, they alleged (in amended declarations filed in October, 1897) that the city had begun supplemental proceedings to collect the amounts of the awards by special assessment, but failed to prosecute the same with reasonable diligence and had abandoned such proceedings, whereby it was claimed a general liability in *assumpsit* had accrued. The city demurred to the declarations as amended. The demurrers were overruled and the city elected to stand by its demurrers; judgments were entered against it aggregating nearly $23,000 for the amounts awarded in the condemnation suit with interest. From these judgments the city appealed to the Appellate Court, which reversed the decision of the lower court and remanded the cases with directions to sustain the demurrers. (Mecartney v. City of Chicago, 150 Ill. App. 275; Thomasson v. Same, 150 Ill. App. 281; Phelps v. Same, 150 Ill. App. 281.) The Appellate Court held that the special assessment method of payment prescribed by the ordinance was exclusive and (in effect) that so long as the ordinance remained in force no suit in *assumpsit* would lie against the city to recover the awards until the city had collected the money by special assessment. In pursuance of the mandate of the Appellate Court, the lower court sustained the demurrers, and the plaintiffs in said suits electing to stand upon the declarations filed, the suits were dismissed at plaintiff's costs, from which judgments the plaintiffs therein appealed to the Appellate Court, where the suits are now pending and undisposed of, in another branch of this court.

In November, 1909, appellant, as owner of all the awards made in 1894, filed in the condemnation proceeding a petition praying for "an absolute and unconditional judgment" against the city for the amount of such awards with accrued interest. The petition

was amended in January, 1910, and, as amended, it set forth in detail the foregoing facts regarding the entry of the condemnation judgments, the taking of possession in 1893, the subsequent unsuccessful attempts to assess a large part of the amount thereof upon the remainder of the lots of appellant after taking the part condemned, the great length of time consumed in such efforts and the final apparent abandonment of all effort to collect anything; it alleged that the city's power to collect had been exhausted; that appellant's rights had been grossly violated; that to deny him judgment in the premises after such a lapse of time and such proceedings, or to require him to wait longer for his money, would amount to taking his property without just compensation and without due process of law and would constitute "an impairment of the contract rights" of appellant, contrary to the provisions of the constitution of this state and of the United States. The city interposed a general demurrer, which was overruled, and then filed an answer admitting and setting forth in greater detail practically all the facts stated in the petition, but denying that the special assessment proceedings had been prosecuted in a negligent manner, alleging that the same "were brought to trial as speedily as possible and practicable," and denying that the city had either abandoned its efforts to collect, or that its power to collect had been exhausted. The answer also set up the proceedings in the three suits in *assumpsit,* and asserted that the decision of the Appellate Court therein is *res adjudicata* of all questions here involved. By a supplemental answer filed in July, 1910, the city alleged the further fact that between January and July, 1910, a fourth supplemental proceeding for a special assessment had been prosecuted in which, after a jury trial, a judgment of confirmation was entered as against appellant's remaining property for $7,783.60, from which judgment appellant had perfected an appeal to the Supreme

Court. (Since the briefs herein were filed the Supreme Court has affirmed this latest judgment in City of Chicago v. Willoughby, 249 Ill. 249.) The Circuit Court, after hearing evidence of the facts alleged in the petition and answer, denied and dismissed the petition, and from that order the petitioner appeals to this court.

It is first contended that the power of the city to levy and collect a special assessment for the amount necessary to pay the unpaid portion of the awards "has long since been exhausted." At the time the briefs in this case were written, the Willoughby case, *supra*, in which that question was directly involved, was pending in the Supreme Court. Since then, it has been decided. The Supreme Court there sustained a special assessment against appellant's remaining property, though levied more than sixteen years after the condemnation judgment was rendered, and after the filing of appellant's petition in this case. That case must therefore be held to be decisive against this contention of appellant.

It is next urged that even if the power of the city to assess benefited property has not been exhausted, the act of the city in taking possession in 1893 of appellant's land and using the same for street purposes, amounted to an appropriation of the land by the city, vested in appellant the immediate right to the compensation awarded, and entitled him to an absolute judgment against the city in the condemnation proceeding for the amount of the awards. If the condemning corporation were a railroad company or other like corporation, having power to condemn and using the provisions of the Eminent Domain Act for that purpose, this might be conceded, upon the authority of St. Louis & S. E. Ry. Co. v. Teters, 68 Ill. 144, for in such case, upon the fact being made to appear that the petitioner had taken possession of the land condemned, nothing would remain to be done except the payment

of the money. But as to cities and villages organized under the general city and village act, the rule is otherwise. In the making of local improvements, they must proceed as directed by the latter act. Under that act as it existed prior to 1897, the first step towards the making of a local improvement was the passage of an ordinance prescribing "whether the same shall be made by special assessment or by special taxation of contiguous property, or general taxation, or both." (Hurd's Stats. of 1895, p. 278, Art. IX, Sec. 2.) It has been repeatedly held that it is within the legislative authority of a city or village to thus fix the mode of payment in advance by ordinance, and that while such ordinance remains in force, it excludes every other mode of payment. Hyde Park v. Corwith, 122 Ill. 441; People v. Hyde Park, 117 Ill. 462; Chicago v. Hayward, 176 Ill. 130; Chicago v. Shepard, 8 Ill. App. 602; Meeker v. Chicago, 96 Ill. App. 23; Mecartney v. Chicago, 150 Ill. App. 275. In C. & N. W. Ry. Co. v. Chicago, 148 Ill. 141, it was held that since 1872 a city or village has no authority to acquire property necessary for a local public improvement, such as the opening of a street, by means of private contracts with the owners, but must pursue the methods prescribed by Article 9 of the City and Village Act, *i. e.*, by condemnation under an ordinance providing that payment shall be made by general taxation or by special assessment, or both. The same doctrine is repeated in Chicago v. Shepard, *supra;* in Snydacker v. West Hammond, 225 Ill. 154, and in Litz v. West Hammond, 230 Ill. 310. It has also been held that after an assessment for a local improvement has been levied and the improvement completed, a city has no power to change the prescribed method of payment. Chicago v. Brede, 218 Ill. 528.

Appellant's counsel seek to distinguish the "Hyde Park cases" mentioned above and the Hayward case, *supra,* from the present case by calling our attention

to the fact that in some, if not all, of those cases, the ordinance required the *whole* cost of the improvement to be paid by special assessment, while here the ordinance provides that the cost "shall be paid for by special assessment to be levied upon the property benefited thereby to the extent that the same may be legally assessed therefor, and the remainder of such cost to be paid by general taxation." It is urged that this provision pledges the general funds of the city, as well as the special fund arising from the collection of a special assessment, for the payment of the awards. As above shown, the city had the right, under Section 2 of Article 9 of the City and Village Act of 1872, to prescribe in advance whether the proposed improvement should be paid for by special assessment, or by general taxation, or both. If its ordinance had prescribed that the whole cost should be paid by general taxation, doubtless the Circuit Court would have had the power to enter an absolute judgment for the amount of the awards, on proof that the city had taken possession, because by the terms of the ordinance in such case a general liability would have been assumed by the city, and nothing would remain to be done except to pay the money. But where part only of the cost is required by the ordinance to be paid by general taxation, and such part is that part only which remains to be paid after *all* property benefited by the improvement shall have been assessed *all* that it is benefited, the power of the court to enter a judgment upon the general liability of the city to pay the part thus described, obviously and necessarily depends upon the question whether there is, or will be, any such part, or "remainder," to be paid. There can be no "remainder" to be paid by general taxation, until it shall be made to appear that all property benefited has been specially assessed "to the extent that the same may be legally assessed therefor." Until that fact is shown, it cannot be known, or ascertained, whether any

amount or part of the condemnation awards, or if any, what amount, will have to be paid by general taxation. So long as the amount of this contingent general liability of the city remains thus unknown and unascertainable, there is no basis in fact upon which to found a judgment against the city. There was no such showing in the petition filed by appellant nor upon the hearing on the petition, as would warrant the court in finding that all property benefited had been assessed all that it is benefited. Hence the distinction pointed out between the ordinances under consideration in the Hyde Park cases and the ordinance in this case can be of no avail to appellant on the facts in this record.

It is urged that Chicago v. Smythe, 33 Ill. App. 28, is an authority to the contrary. We do not so read that case. It appears from the opinion there filed, that the only defense made by the City to a common-law action to recover the value of land taken for street purposes was that "the city offered to. prove that *it had been unable* to collect the special assessment levied to pay for the improvements," and as to this offer, the court said: "Here such part of the cost of the improvement as should not be levied on property benefited is to be paid by general taxation. If, therefore, the City has not succeeded in finding property benefited, or has failed for any reason to collect assessments made on property being benefited, *the deficiency* is to be made up from the general fund." From this language, it is apparent that the court proceeded upon the theory that there was, *in fact,* a "deficiency," which is precisely the contingency contemplated by the terms of the ordinance. There can be no such "deficiency" to be paid by general taxation until the power of the City to assess for benefits has been exhausted. Whenever that fact shall be made to appear, it will necessarily follow that the "deficiency," or "remainder of the cost," will have to be paid by the city out of its general funds. Newman v. Chicago, 153 Ill. 469; Goodwillie v. Lake View, 137 Ill. 51.

It is next urged that the decisions of the Appellate Court, in Mecartney v. Chicago, 150 Ill. App. 275, Thomasson v. Chicago, 150 Ill. App. 281, and Phelps v. Chicago, 150 Ill. App. 281, are in conflict with "a long line of Illinois decisions" holding (it is said) "that the liability to pay became absolute upon taking possession by the condemnor;" that "the rights of appellant and his assignors had become fixed" under such prior decisions, and therefore the ruling in the three cases mentioned "infringe the constitutional rights of appellant," under the doctrine announced by the Supreme Court of the United States in the "Elevated road case" of Muhlker v. N. Y. & H. R. R. Co., 197 U. S. 544.

This contention was merely stated without argument in the briefs filed. After the oral arguments were heard, appellant's counsel filed a motion for leave to file "additional suggestions," consisting of an argument covering twenty-nine printed pages, and a decision on this motion was reserved by the court. Ordinarily such palpable transgression of the rules of this court will not be permitted. As, however, we have reached the conclusion that the order of the court below must be affirmed, and no harm, therefore, will be done to appellee by granting the motion, the motion will be allowed.

In the three cases above mentioned (150 Ill. App. 275-281) the Appellate Court held that no count of the declarations in *assumpsit* there filed stated a good cause of action, for the reasons given in the Hyde Park cases, *supra*. This being true, if there is any conflict such as is claimed, the conflict has existed ever since the Hyde Park cases were decided by the Supreme Court; and if there is any conflict in the decisions of that court, as between the Hyde Park cases and the earlier cases cited by appellant's counsel, this court would nevertheless be bound to accept and follow the rule laid down by the Supreme Court in the later cases. Inasmuch, also, as the last of the Hyde

Park cases was decided in 1887, and the rights of appellant and his assignors did not accrue, under any theory, until 1893, we are at a loss to perceive how any constitutional rights of appellant could possibly have been infringed by any supposed conflict in such decisions. We cannot, however, concede that any such conflict exists. The distinction between railroad condemnation cases and those of cities and villages, has already been shown. It does not appear from the opinions in the earlier cases cited in which a city or a village was the condemning party, that any question was raised, or could have been raised under the ordinances involved in those cases, or the statutes then in force, as to the mode provided for the payment of the awards. In some, at least, of such cases, the general liability of the City was predicated upon facts different from the facts recited in the opinions in the Hyde Park cases. For example, in the Wheeler cases (Wheeler v. Chicago, 24 Ill. 105, and Chicago v. Wheeler, 25 Ill. 478) the ruling of the court that "implied assumpsit" would lie to recover the amount awarded in a condemnation suit, seems to have been based upon the fact, alleged and proved, that the City had failed to collect a special assessment levied to pay the award, during the two years in which, under the statute then in force, such special assessment was a lien on the property assessed. In Clayburgh v. Chicago, 25 Ill. 535, upon similar facts, the court held that an action on the case could be maintained for "the willful refusal of the city authorities to discharge their duty," or that the party injured might elect in such case to waive the tort and sue in *assumpsit* for the value of the land taken. No such wilful refusal, or wrongful failure, on the part of the City authorities, to perform a statutory duty, was alleged or shown in the Hyde Park cases.

In Chicago v. Barbian, 80 Ill. 482, a case brought under the City and Village Act, the City repealed the

ordinance for the proposed improvement and dismissed the condemnation proceedings after an award had been made to a land owner. No part of the owner's property was actually taken or damaged, yet he sought by mandamus, to compel the City to pay the damages awarded. The court sustained a demurrer to the petition, holding that so long as his land was not taken or damaged, the owner acquired no right to compensation. In one part of the opinion, the court said: "Of course, if by the owner's consent, either expressed or implied, the property is taken or damaged before compensation is made, the owner has a vested right in the compensation." This sentence—a pure dictum—was quoted later in Chicago v. Shepard, 8 Ill. App. 602, 608; but on the next page of the same opinion the court makes and applies to the facts of that case the distinction above stated between a railroad company and a municipality, and holds that where a city ordinance provides that an improvement be made by special assessment, that method of payment is exclusive. The learned Justice who wrote the opinion in the Shepard case, *supra,* afterwards, in Corwith v. Hyde Park, 14 Ill. App. 635, modified his former opinion, and held that the mode prescribed by ordinance was not exclusive, because it was not a mode available to both parties; but this modification (adhered to in Hyde Park v. Corwith, 20 Ill. App. 666) was overruled and his original view confirmed by the Supreme Court on appeal in Hyde Park v. Corwith, 122 Ill. 441.

It is contended by appellee's counsel that in no event has the Circuit Court the power to enter, *in the condemnation proceeding,* such a judgment as prayed for in appellant's petition. We are inclined to agree with this contention. The only precedent cited for such procedure is the Teters case, *supra,* but that case, as we have already said, was brought by a railroad company under the Eminent Domain Act, while this is

under the City and Village Act. The statutes, and the rights and duties of the petitioner under them, are essentially different. The final order for possession, after payment of the awards, is substantially the same, but in one case nothing remains to be done after the entry of the judgment fixing the awards but to pay the money and take possession, which may be done immediately; while in the other, a special assessment must be first levied and collected before the City is authorized to make payment, even though possession be given to the City by the property owner.

Doubtless the City in such cases owes to the property owner the duty of prosecuting its special assessment proceedings with reasonable diligence. That this duty has been neglected in this case is abundantly evident. The facts presented show an extraordinary absence of anything resembling diligence. The mere fact that appellant successfully contested the first two assessments and caused their dismissal, or that he objected unsuccessfully to the last two, is no excuse whatever for such unusual and unnecessary delays as are shown by this record. The facts that a supplemental petition for an assessment was filed in January, 1910, that the assessment made thereunder was confirmed over objections and after a jury trial in June, 1910, and that such confirmation was finally affirmed in the Supreme Court in October, 1910—thus beginning and completing a whole assessment proceeding within one year's time—are potent evidence of what might and should have been accomplished by reasonable effort sixteen years ago. In Winkelman v. Chicago, 213 Ill. 360, it was held that when a municipal corporation institutes a proceeding to condemn land, it is its duty to prosecute the suit with diligence, and to decide within a reasonable time after the conditional judgment is entered whether it will pay the damages awarded or abandon the proceeding; that if it wrongfully delays the trial, and omits to make such election

within a reasonable time, and then elects to discontinue, it is liable to the land owner for damages. The court there said that the right to recover in such cases is based, not upon the mere fact of delay, but upon the theory that the delay has been wrongful and has occasioned damage to the land owner.

But during all the time the proceedings in this case have been pending, there was a statute in force (Hurd's Stats. of 1895, ch. 24, sec. 53, p. 285) providing in substance, that where such a suit is brought, the City shall take and pay for the land sought to be condemned "within two years of the entry of judgment;" that after such two years, the court may, on motion, "enquire in a summary manner" whether the land has been taken and paid for; that if the court finds the land has been taken and not paid for, it shall enter an order requiring the City to pay the amount awarded as the value of such land with interest, by a short day, and in default of such payment within the time limited, to dismiss the proceedings, issue a writ of possession in favor of the owner, and enter a judgment against the City "for interest from the day of such taking;" and that "every such cause shall be considered as pending in the court in which the same has been or shall be commenced until all the lands sought to be taken are paid for, or until the proceedings are dismissed where the lands have not been taken." In Chicago v. Hayward, *supra,* the court said of this provision of the City and Village Act (p. 136): "By this statute, the cause is considered as pending for the purpose of giving an aggrieved party complete relief, and it provides a summary remedy for cases where cities have taken possession of land and have not paid therefor." This section of Article 9 of the City and Village Act was not superseded, as to pending cases, by the Local Improvement Act of 1897. South Chicago City Ry. Co. v. Chicago, 196 Ill. 490. That the condemnation case is still pending was, in effect, ad-

mitted by appellant when he filed his petition in this case. . If, therefore, appellant was injured by the remarkable delay of the City, he had his remedy by motion in the Circuit Court for an *alternative* judgment under the provisions of the above mentioned section of the City and Village Act; and on familiar principles, the Circuit Court was not authorized to enter any other or different judgment *in the condemnation proceeding* after the lapse of the two years. We cannot agree with the argument of appellant's counsel to the effect that said section does not cover cases where possession has been taken by consent. That section makes no such distinction. By its express terms it applies to all cases in which, upon motion and a summary hearing, the court shall find "that such city or village has taken possession of the land and had not paid therefor." Chicago v. Hayward, *supra.* Whether appellant might also have a concurrent remedy by an action on the case for damages caused by the wrongful delay, as in the case of Winkelman v. Chicago, *supra,* is not before us for decision.

For the reasons indicated, the order or judgment of the Circuit Court will be affirmed.

*Order affirmed.*