117 462
122 445
117 462
131 539
117 462
33a 32
117 462
137 579
117 462
155 41
117 462
176 135
117 462
84a 568
117 462
96a 6 25
117 462
196 5494
117 462
198 6585
117 462
e105a 1410

# THE PEOPLE *ex rel.* George L. Thatcher

*v.*

# THE VILLAGE OF HYDE PARK.

*Filed at Ottawa January 25, 1886.*

1. MANDAMUS—*to compel the doing of an unlawful act—as, in the making of a special assessment after the proper time has elapsed.* A writ of mandamus will not be awarded for the performance of an act which for any reason has become unlawful to be performed. So the writ will not be allowed to compel village authorities to make special assessments to pay judgments of condemnation when more than five years have elapsed after dismissal of the proceedings.

2. SAME—*demand of performance—whether necessary.* The writ will not be granted to compel the corporate authorities of a village or other body to do an act it has never been asked to do. The petition should show a demand for performance of the act, and a refusal.

3. SAME—*as to discretionary matters—as, the making of a special assessment, or incurring municipal indebtedness.* The propriety of making special assessments by village authorities is a matter exclusively within their legislative discretion, and so is the propriety of their contracting corporate indebtedness; and such discretion will not be interfered with by the courts. The courts will never compel them to contract an indebtedness for any purpose.

4. OPENING STREETS—*necessity for an ordinance.* No street can be opened except under an enabling ordinance, and without such ordinance there can be no condemnation of property for public use by a city or village.

5. SAME—*opening or widening streets by sections.* A street may be widened or opened by sections. Therefore, the repeal of an ordinance for the laying out and opening of a street, except as to lands taken possession of for public purposes, is not a vacation of the entire street, as proposed, but only the part not in fact opened.

6. SAME—*taxation for local improvements—discretion as to the mode.* The mode of making local improvements, as, opening streets, is a matter of discretion with the municipal authorities, not subject to judicial control. They may be paid for in any mode provided by law, either out of the general fund, by special taxation, or by special assessments; and the adoption of either mode excludes the idea of payment in any other.

7. So where the ordinance for the opening of a street provides for the payment of the cost of the improvement wholly by special assessments, and the proceeding is vacated or abandoned as to a certain portion of the street,

the courts will not compel the payment of the judgments for the lands actually taken and used for a street in·any other mode than by special assessments. In such case a *mandamus* will be denied which seeks to compel payment out of the general fund raised by taxation on all the property of the municipality.

8. ISSUES OF FACT—*in the Supreme Court—how tried.*  Where issues of fact are made in this court on a petition for *mandamus*, they will be referred to the proper trial court,·to be found and certified back.

This was a petition· for a *mandamus*, brought in this court by the relator, against the village authorities of Hyde Park, to compel the payment of certain judgments rendered in a proceeding to condemn land for a public street.  Certain issues of fact were ordered to be tried before a jury in the Superior Court of Cook county.

Mr. CONSIDER H. WILLETT, for the relator:

Where a city, through its neglect, fails to collect the special assessment to pay condemnation money, it must pay the same out of its general fund.  *Maher* v. *Chicago,* 38 Ill. 266; *People* v. *Cairo,* 50 id. 154; *Chicago* v. *People,* 56 id. 357.

The doctrine of abandonment may be exercised by a municipality, with reference to the mode in which it sought to make payment for property taken by condemnation.

*Mandamus* upon a judgment is barred, like debt upon a judgment.  *Peoria Co.* v. *Gordon,* 82 Ill. 435.

The statute governing this case is almost identical with section 5 of the West Park act, which was construed by this court in *People* v. *Atchison,* 95 Ill. 452, to limit the making of a special assessment to five years.

The fact that Hyde Park, by its own acts, could not levy or could not collect a special assessment to pay for the land taken, to open the street, establishes its general liability, which can only be discharged by general taxation.  *Wheeler* v. *Chicago,* 24 Ill. 105; *Clayburgh* v. *Chicago,* 25 id. 535; *Bradford* v. *Chicago,* 25 id. 411.

*Mandamus* is the adequate and appropriate remedy to compel municipal corporations to pay judgments obtained

against them. *City of Olney* v. *Harvey,* 50 Ill. 453; *Town of Lyons* v. *Cooledge,* 89 id. 529.

The assignee of such judgment may maintain mandamus. *Higgins* v. *Chicago,* 18 Ill. 276; *Chicago* v. *Sansum,* 87 id. 182.

As against municipal corporations, a *mandamus* takes the place of an execution.

After possession is taken, the rights of the parties is irrevocably fixed, so that the party condemning must make payment. *Ferris* v. *Ward,* 4 Gilm. 499; *Sangamon Co.* v. *Brown,* 13 Ill. 207; *Dunlap* v. *Mt. Sterling,* 14 id. 251; *Curry* v. *Mt. Sterling,* 15 id. 320; *Peoria Co.* v. *Harvey,* 18 id. 364; *Taylor* v. *Marcy,* 25 id. 518; *Commissioners* v. *Durham,* 43 id. 86; *Barbian* v. *Chicago,* 80 id. 482; *Hyde Park* v. *Dunham,* 85 id. 569; *Commissioners* v. *Dunlevy,* 91 id. 49; *Chicago* v. *Palmer,* 93 id. 125; *Beveridge* v. *Commissioners,* 100 id. 75.

It is no concern to the parties whose lands are taken, as to the mode the village may adopt to pay them their compensation. *Byron* v. *Blount,* 97 Ill. 62.

*Mandamus* should command the borrowing of money to pay this judgment. Rev. Stat. chap. 24, art. 7, sec. 3.

Mr. GEORGE WILLARD, for the respondent:

The original ordinance provided that the cost of the improvement should be paid by special assessment.

A street may be widened or opened by sections. *Bigelow* v. *Chicago,* 90 Ill. 49.

It is competent for the village still to collect the condemnation money by special assessment, and that is the only mode by which the same may be collected.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is an original suit in this court, and is a petition for *mandamus,* brought in the name of the People, on the relation of George L. Thatcher, against the village of Hyde Park, to compel the village to pay for land alleged to have been

taken for a street or highway, under certain condemnation proceedings had in 1873. It appears from the statement of the petition, that on December 7, 1872, the village of Hyde Park in due form passed an ordinance to take certain lands lying between Forty-first and Forty-seventh streets, within the limits of the village, for a public street, to be called Forrestville avenue. In and by that ordinance it was provided the entire cost of the proposed improvement should be paid for wholly by special assessments. Afterwards such proceedings were had, on petition of the village, the compensation to owners whose lands were taken was duly ascertained according to law, and, among others, damages were awarded to William T. McKeever and George Matthews for lands respectively owned by them, and judgments in condemnation rendered in favor of each of them for the sums ascertained to be just compensation for the lands taken for public purposes. The lands belonging to these owners are situated between Forty-first and Forty-second streets. It is not controverted that afterwards McKeever and Matthews assigned their respective judgments to relator, and to confirm such assignments quitclaim deeds were executed vesting the title to such lands in the relator, so that he has now the same right in such condemnation judgments as the original owners of the land had. It also appears that after the rendering of the judgment of condemnation, the village, with the consent of the owners, took possession of the lands of McKeever and Matthews, for a public street. This fact in the case is no longer disputed, since it was found as a fact by the court, to which certain questions of fact were sent to be ascertained by trial. On December 5, 1873, the village caused a supplemental petition to be filed, for an order of court directing a special assessment to be made in accordance with the provisions of the ordinance. It seems commissioners were appointed who made a special assessment, which it is alleged was made March 20, 1875. An order was entered that objec-

tions be filed to such assessment rule by a day fixed, and after the expiration of the time so fixed, an order was entered in the case that a default be entered against all parties who had not filed objections to the assessments made. In respect to this assessment the allegation of the petition is, that no further order or proceedings have ever been taken concerning the same, under such supplemental petition, by the village. Later on,—perhaps on the 2d day of July, 1877,—the village passed an ordinance for "abandoning proceedings for the opening of Forrestville avenue." The second section of that ordinance in terms repeals the original ordinance providing for the opening of Forrestville avenue from Forty-first street to Forty-seventh street, and "provided that if, through any acts of the village, parts of said avenue have been taken possession of, so that the same has become a public highway, said ordinance shall be construed as not vacating such parts of said avenue." In July, after the passage of this ordinance, the village moved the court to dismiss all proceedings theretofore taken in the cause, and to set aside and discharge all the condemnation judgments entered against the corporation. On ascertaining the village had in fact taken possession of the lands of McKeever and Matthews lying between Forty-first and Forty-second streets, with the consent of the owners, the court refused to allow the petition to be dismissed, so far as these lands or judgments were involved, but did permit the village to dismiss all proceedings concerning the residue of the lands proposed by the original ordinance to be taken, lying between Forty-second and Forty-seventh streets.

The corporate authorities and the finance committee of the village are made defendants, and the prayer of the petition is, first, that a writ of *mandamus* issue, requiring the president and trustees of the village to levy a general tax to pay the judgments now held by relator, upon all the property situated in the village; second, for an order against the presi-

dent and finance committee of the village, under the sanction of the board of trustees, that they borrow a sufficient sum of money to pay relator's judgments, with interest and costs, as is provided in section 3, article 7, chapter 24, of the Revised Statutes of 1874; and third, if this court shall be of opinion the relief above demanded is not proper, but that the village has power to levy a special assessment, or to proceed with the collection of the special assessments mentioned in the petition as having been commenced, then and in that case relator asks that the village authorities be compelled to proceed according to law to make a special assessment, and to pay relator's judgments.

It will, perhaps, be most convenient to consider the matters concerning which relief is demanded, in the inverse order stated. As respects the alternative relief asked in case the principal relief prayed for should be thought not proper, it seems to be two-fold: First, that the village be required to make a special assessment in accordance with law; or second, that the village be required to proceed with the collection of the assessment commenced as stated in the petition. It seems to be conceded by counsel for relator, it would be illegal to make any new assessment unless done within five years from the date of the dismissal of the proceedings as to all lands except those lying between Forty-first and Forty-second streets. That was in July, 1878, and more than five years have elapsed since that date before the petition in this case was filed. Whatever equity there might have been for action in this particular case, it is clear a writ of *mandamus* will never issue for the performance of an act which, for any reason, has become unlawful to be performed.

As respects the second branch of the alternative relief demanded, or perhaps suggested, if it shall be conceded, as it is thought it may be done, the supplemental petition filed December 5, 1873, praying the court to enter an order directing a special assessment to be made in accordance with law,

shall be regarded as still pending, so far as the property between Forty-first and Forty-second streets is concerned, although dismissed as to all property between Forty-second and Forty-seventh streets, it would seem to be a sufficient answer to the position taken it is not alleged the corporate authorities of the village ever refused to proceed with that special assessment. Without determining whether the village has now any rightful authority to proceed on the petition so filed at a former time, it can hardly be said a writ of *mandamus* will issue to compel a party to do a thing it was never asked to do. The petition contains no allegation any demand was ever made upon the village to go forward with the proceedings instituted in 1873, for the collection of the special assessment. It is alleged, demand was made upon the village for the payment of relator's judgments, and that it had failed and refused to make payments of the same. That is the only demand made upon the village.

The question of borrowing money for any purpose specified in section 3, article 7, chapter 24, of the Revised Statutes of 1874, is wholly within the discretion of the village officers designated for that purpose. The rule is well settled and uniformly observed, the courts will never compel a municipal corporation to contract an indebtedness for any purpose. When that may be done must be left to the discretion of the municipal officers, so they act within powers conferred by law. This proposition seems so plain it need not be elaborated.

But these are minor questions in the case, to which no great importance is attached. The principal point made is, whether this court will compel the village to pay relator's condemnation judgments, or, what is the same thing, compel the village to levy a general tax on the property within the village for that specific purpose. The argument in support of the relief demanded seems to proceed on the theory the action of the village under the repealing ordinance of July 2,

1877, wiped out all proceedings previously had in relation to opening Forrestville avenue, except the condemnation judgments as to the land between Forty-first and Forty-second streets, and as the village had taken possession of the lands, these judgments by that act became absolute, and hence should be paid out of common funds, as any other judgments. The fallacy of the position taken consists, in part, at least, in the assumption that all proceedings concerning the opening of the avenue between Forty-first and Forty-second streets, other than the mere judgments, were disannulled by the action taken under the repealing ordinance. Such is not the case. It was expressly provided that as to any land of which possession had been taken for public purposes, the "ordinance shall be construed as not vacating such parts of said avenue." The correct reading of the ordinance in this respect is, that as to all parts of the avenue where possession had been taken, the repealing ordinance should be inoperative. This is its clear and manifest meaning. It was so construed by the court, and it was for that reason permission to dismiss the proceedings was refused as to all parts of the avenue where possession had been taken. This court decided in *Bigelow* v. *City of Chicago*, 90 Ill. 49, that a street might be widened by sections, and no reason is perceived why a street in a village or city may not be opened by sections. The effect of what was done was to permit the opening of all that part of the avenue where possession had been taken under the original ordinance to open Forrestville avenue. If this were not so, there could be no condemnation judgments in favor of relator or his assignors. No street can be opened except under enabling ordinances, and without such ordinance there can be no condemnation of property for public uses by a city or village. There is, and can be, no doubt the mode of making payments for local improvement is within the discretion of the municipal authorities, and that that discretion is not subject to the control of the courts.

Such improvements may be paid for in any mode provided by law, either out of the general fund, by special taxation, or special assessments, and the adoption of either mode excludes the idea of payment in any other way. In this case the village board declared, by ordinance, in advance, the entire cost of the proposed improvements should be paid for wholly by special assessment. As has been seen, the original ordinance, so far as the lands between Forty-first and Forty-second streets are concerned, is still in force, and the mode of payment for the proposed improvement is as fixed by that ordinance,—that is, by special assessment. It is not true, in law, as counsel suggest, the special assessment proceeding, so far as the two blocks are concerned, was abandoned and rescinded by any action of the village board. What new ordinance or amendments, if any, may have been necessary, in view of the abandonment of a part of the proposed improvement, is not now before this court for decision. It is decisive of the present case the village board determined the improvements undertaken should be paid for by special assessment, and while that ordinance remains in force, as it does, it excludes any other mode of payment,—hence the prayer of relator that his condemnation judgments may be paid out of the general fund raised by taxation on all the property subject to taxation by the village, must be denied.

The writ of *mandamus* must be refused.

*Writ refused.*


Mr. JUSTICE SHELDON thinks the writ should be awarded to compel the village to proceed with the collection of the special assessment for payment of petitioner's judgment, in accordance with the alternative prayer of the petition.

MAGRUDER, J.: I concur with Mr. Justice SHELDON.