THE CITY OF CHICAGO, Appellee, *vs.* NINA THOMASSON *et al.*—(HARRY S. MECARTNEY, Appellant.)

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

1. EMINENT DOMAIN—*a condemnation proceeding must have statutory authority.* A proceeding by a city to condemn land for a local improvement is not founded on the common law but must have statutory origin.

2. SAME—*in 1893 article 9 of Cities and Villages act was the only authority for condemning land for a local improvement.* In 1893 article 9 of the Cities and Villages act of 1872 was the only authority whereby a city might condemn private property for a local improvement, and the only power possessed by the court in such a proceeding was that derived from said article.

3. SAME—*adoption of a method for making payment excludes other methods.* Under article 9 of the Cities and Villages act a city might, in condemning private property for a local improvement, provide for payment of compensation by special taxation, special assessment or out of general funds; but the adoption of one method by the ordinance excludes the idea of payment in any other manner.

4. SAME—*effect where property owner delivers possession before payment of the compensation.* If the owner of property condemned by a city for a local improvement to be paid for by special assessment upon property benefited, under the provisions of article 9 of the Cities and Villages act, voluntarily delivers possession to the city before the compensation is paid he does not thereby waive his right to compensation, but he cannot insist upon payment in any other manner than in that provided for by ordinance.

5. SAME—*article 9 of Cities and Villages act does not cover case where the owner delivers possession before the award is paid.*

Article 9 of the Cities and Villages act does not cover the case where the owner of land condemned for a local improvement to be paid for by special assessment voluntarily delivers possession to the city before the compensation is paid, and by such action the owner deprives himself of the provisions of the statute under which the court might grant relief in case the city wrongfully took possession without payment of the compensation.

6. SAME—*when the court has no jurisdiction to enter absolute judgment for compensation.* Where a property owner, in a proceeding by a city, under article 9 of the Cities and Villages act, to condemn the property for a local improvement to be paid for by special assessment, voluntarily delivers possession to the city before the compensation is paid, the court has no power, on petition filed by the owner in the original proceeding, to enter an absolute and unconditional judgment against the city for the amount of such unpaid compensation. (*St. L. & S. E. Ry. Co. v. Teters,* 68 Ill. 144, and *City of Chicago v. Barbian,* 80 id. 482, explained.)

7. SAME—*property owner delivering possession before compensation is paid is not without remedy.* Where the ordinance condemning private property for a local improvement, under article 9 of the Cities and Villages act of 1872, provides that compensation shall be paid by special assessment upon property benefited to the extent it may be legally assessed and the balance by general taxation, a property owner who voluntarily delivers possession to the city before the compensation awarded is paid may by *mandamus* compel the city to levy and collect the special assessment if it fails to exercise due diligence in that regard, and if a balance remains unpaid after exhausting the power of special assessment, he may by *mandamus* compel the city to raise the balance due according to the provisions of the ordinance.

APPEAL from the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding.

RICHARD W. CLIFFORD, and ENOCH J. PRICE, for appellant.

PHILIP J. MCKENNA, and HOWARD F. BISHOP, (WILLIAM H. SEXTON, Corporation Counsel, of counsel,) for appellee.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

On August 29, 1893, the city of Chicago, pursuant to an ordinance providing for the opening and widening of South Park avenue between Fifty-fifth and Fifty-sixth streets, filed its petition in the circuit court of Cook county, under article 9 of the Cities and Villages act of 1872, for the condemnation of the east 37 feet of the two lots in that block fronting upon the west side of said South Park avenue. These two lots were known as lot 13 and lot 15. Adjoining lot 15 on the west was lot 16. Lot 13 was at that time owned by Nina Thomasson and Gwynn Garnett. Appellant, Harry S. Mecartney, owned the south 150 feet of said lots 15 and 16, and the balance of lots 15 and 16 was owned by George D. Phelps. At that time South Park avenue, both north and south of the block in which these lots were situated, was of the width of 66 feet. Along this block the street was 29 feet in width. The ordinance provided for the condemnation of this property for the purpose of improving South Park avenue by opening it to a uniform width. On September 1, 1893, the city of Chicago, with the consent of the owners of said lots, took possession of the strip sought to be condemned and at once completed the proposed improvement. Thereafter compensation was awarded the owners in the condemnation proceeding for the property taken, as follows: To the owner of lot 13, $12,025; to the owner of the south 150 feet of lots 15 and 16, $4162.50; to the owner of lots 15 and 16, except the south 150 feet thereof, $3312.38. The ordinance, pursuant to which the condemnation proceedings were had, provided that this local improvement should be paid for by a special assessment to be levied upon the property benefited thereby to the amount that the same might be legally assessed therefor, the remainder to be paid by general taxation, in accordance with article 9 of the said Cities and

Villages act of 1872. Appellant thereafter became the assignee of the judgment awarding compensation to Thomasson and Garnett, and thereafter purchased from Phelps the remainder of lots 15 and 16 and became the assignee of his judgment. He caused that part of lots 15 and 16 not taken for street purposes to be subdivided into eight lots, each fronting upon South Park avenue, such subdivision being known as Snow & Co.'s subdivision. To raise the amount of the compensation awarded in accordance with the local improvement ordinance various supplemental petitions were filed under section 53 of said article 9, with the result that in the year 1909 all the property which had been specially benefited by the improvement had been assessed therefor except lots 1 to 8, inclusive, of said Snow & Co.'s subdivision, owned by appellant or his grantees. The amounts collected by such assessments prior to the time of the filing of the petition herein had been distributed and paid upon the three judgments, as follows: On May 9, 1901, there was paid upon the Thomasson and Garnett judgment, by special assessment against the remainder of lot 13, the sum of $4245.96, and on December 31, 1902, there was paid in cash on the same judgment, from special assessment collections from other property, the sum of $3000. On December 31, 1902, there was paid in cash upon each of the other two judgments the sum of $1451.39. A number of proceedings were had for the purpose of making a special assessment against the property in Snow & Co.'s subdivision owned by appellant or his grantees, all of which were resisted by appellant. He first contended that this property was not liable for any special assessment, for the reason that the benefits to this property were taken into consideration by the jury in fixing the amount of the damages in the condemnation proceeding. This question was finally determined contrary to this contention in *City of Chicago* v. *Mecartney*, 216 Ill. 377. Since the filing of the petition

herein another proceeding was had to make a special assessment against the property included in Snow & Co.'s subdivision, wherein it was contended by the grantees of appellant that the city had lost its power to make a special assessment for this improvement, which question was also finally determined against that contention in *City of Chicago* v. *Willoughby,* 249 Ill. 249. On November 27, 1909, appellant, by leave of court, filed his petition in the condemnation proceeding, wherein he set up all the steps which had been taken from the time of the passage of the local improvement ordinance down to that date, including the circumstances under which the city had taken possession of the strip sought to be condemned, and prayed for an absolute and unconditional judgment in the cause against the city for the amounts of said three judgments, respectively, with interest thereon from September 1, 1893, less the amounts which had been paid thereon. The city was required to answer this petition, and after a full hearing a judgment was rendered by the circuit court dismissing the petition, which judgment has been affirmed by the Appellate Court for the First District. This appeal has been prosecuted from the judgment of the Appellate Court on a certificate of importance.

The first proposition argued by both parties is, whether the circuit court had jurisdiction, in any event, to enter the judgment prayed for by this petition. A condemnation proceeding such as this is not founded on the common law but must have a statutory origin. The only statute in existence upon which this proceeding could be founded at the time the original ordinance was passed and the condemnation proceeding begun was said article 9 of the Cities and Villages act of 1872, which act is expressly referred to in the ordinance as the statute upon which it was based. This act has been superseded by the Local Improvement act of 1897, which provides that pending proceedings shall be completed under the provisions of the act of 1872. While it

is true that the city was empowered at that time to con-
demn land for various corporate purposes and pay for the
same out of its general funds without any reference to said
article 9 of the Cities and Villages act, it was only under
the provisions of this article that the city might condemn
property for a local improvement. The only power the city
had in the premises, and the only power and authority pos-
sessed by the court in the proceedings instituted pursuant to
the ordinance, was that derived from said article 9. That
article provided for a purely statutory proceeding and was
a complete code in itself. By section 1 it provided "that
the corporate authorities of cities and villages are hereby
vested with power to make local improvements by special
assessment or by special taxation, or both, of contiguous
property, or general taxation, or otherwise, as they shall by
ordinance prescribe;" and by section 2, "when any such
city or village shall, by ordinance, provide for the making
of any local improvement, it shall, by the same ordinance,
prescribe whether the same shall be made by special as-
sessment or by special taxation of contiguous property, or
general taxation, or both." We have held that under this
statute payment may be made in any one of the modes pro-
vided. It may be made out of the general funds, by special
taxation, or by special assessment, but the adoption of any
one or more of these modes by a local improvement ordi-
nance excludes the idea of payment in any other manner.
*People* v. *Village of Hyde Park,* 117 Ill. 462; *Village of
Morgan Park* v. *Wiswall,* 155 id. 262.

Following the provisions of the constitution, said arti-
cle 9 provided that the city should not take or damage any
property condemned until after the compensation awarded
was fully paid, and it also provided abundant means where-
by the land owner, in case the city should wrongfully take
the property without making payment of the compensation,
might compel the city, by a short day, to pay such compen-
sation or restore possession to the owner. Such a situation

as is presented here was evidently not contemplated by this statute, as no proceedings were prescribed for cases where the owner voluntarily delivered possession to the city for the purpose of having the improvement completed before payment of the compensation. The statute proceeded upon the theory that the compensation awarded should be paid before the land was taken or damaged, and only such proceedings were provided for as would carry out and effectuate that purpose or provide for restitution in case the city should wrongfully take possession of the property before the payment of the damages awarded. We are unable to find in this act any authority for the entry of such a judgment as is prayed for by the petition under consideration. By voluntarily delivering possession of the strip sought to be condemned by the city, the owners of the lots in question established a relationship to the city in reference to this proceeding that was not contemplated by the statute, and thereby deprived themselves to some extent of the protection vouchsafed land owners by this statute in the matter of securing the payment of the damages awarded them.

Appellant does not claim that this statute expressly provided for the remedy he seeks, but says that he invokes the "power implicit in the court in such cases." In support of his contention that the circuit court has jurisdiction to grant the relief prayed for, he cites the cases of *St. Louis and Southeastern Railway Co.* v. *Teters,* 68 Ill. 144, and *City of Chicago* v. *Barbian,* 80 id. 482. The *Teters case* was a condemnation proceeding brought by a railway company under the Eminent Domain act, and what was there said is of no value in determining a question such as this, arising under article 9 of the Cities and Villages act of 1872. The *Barbian case* was a petition for *mandamus* to compel the levy and collection of a tax for the payment of the damages awarded to the relator in a condemnation proceeding brought under article 9 of the Cities and Villages act of

1872. It there appeared that subsequent to the condemnation proceeding, and before any portion of the relator's property had been taken or damaged for the contemplated improvement, the city of Chicago repealed the ordinance under which the proceedings for condemnation were had and discontinued all further proceedings for the making of the improvement contemplated thereby. The question for determination in that case was, did the relator have a vested right in the order or judgment of the court awarding him damages which was not defeated by the discontinuance of the contemplated improvement?—and it was there held that he did not have such right and under such circumstances could not enforce the judgment by *mandamus*. In discussing the questions presented we there said: "The rights of the parties are correlative and have a reciprocal relation, the existence of the one depending on the existence of the other. When the party seeking condemnation acquires a vested right in the property the owner has a vested right in the compensation; but since no vested right can be acquired in the property, without the owner's consent, until compensation shall be paid, it must follow there can be no vested right in the compensation until after the amount is paid. Of course, if by the owner's consent, either express or implied, the property is taken or damaged before compensation is made, the owner has a vested right in the compensation."

Appellant relies upon this language as establishing his right to an absolute judgment in the condemnation proceedings which shall constitute a general liability against the city. Appellee contends that this language is mere dictum and was not necessary to a determination of the question there presented. Whether it be dictum or not, the rule there stated is correct and is applicable to the situation here presented. The rights of the parties are reciprocal, and when the condemnor acquires a vested right in the property

the owner thereupon acquires a vested right in the compensation. Having consented that the city should immediately enter upon their property and take possession of and damage the same, the appellant and the other property owners voluntarily waived their right to demand their award for damages before the land could be taken and the city thereupon acquired a vested right in the property. The owners, as is said in the *Barbian case,* also acquired a vested right in the compensation, and the rights of both parties thereby became absolute and irrevocable except by common consent. The liability of the city, however, as to the manner in which payment for damages should be made was not changed. The agreement between the property owners and the city, whereby the city at once acquired possession and the right to take the property, could not and did not change the terms and provisions of the original ordinance, which provided that the cost of the improvement should be paid for by special assessment to be levied upon the property benefited thereby to the amount that the same might be legally assessed therefor, the remainder to be paid by general taxation. While the property owners, on delivery of possession to the city, immediately acquired a vested right in their compensation, they did not acquire a right to have that compensation provided for and paid to them in any other manner than that specified in the ordinance. At the time possession was given the ordinance authorizing the improvement had been passed. Its terms were known and the condemnation proceedings therein provided for had been begun. By thus delivering possession to the city the property owners placed themselves without the provisions of the statute. While they were none the less entitled to their compensation by thus consenting to delivery of possession, they deprived themselves of some of the means of insuring payment. They could no longer say to the city, "When you pay for our property you may have possession," or, in case possession had wrongfully been taken before payment made, "You

must make payment within a short day or re-deliver possession of the property to us." They were bound by the provisions of the ordinance, and, although out of possession, must await payment according to its terms. However, they were not left remediless. They had at hand the means to compel the city to perform any duty legally devolving upon it. If the city failed to exercise due diligence in making the assessment against the property specially benefited, it could, after demand, be compelled to do so by *mandamus*. If, after having raised by special assessment all the money which could be so raised, it neglected to pay the remainder due according to the provisions of the ordinance, it could also be compelled to act by *mandamus*. That the city has failed to exercise due diligence in proceeding to collect assessments with which to pay for the damages done in the taking of this property cannot be denied. For years at a time no steps were taken or attempted to be taken in this proceeding. This situation may be partially accounted for by the fact that appellant was all the time contending that his lots in said Snow & Co.'s subdivision (being the only ones specially benefited which had not been assessed) were not liable for special assessment in this proceeding, and it is possible that for this reason he did not desire to proceed by *mandamus*.

Appellant advances various reasons why his claim for damages now constitutes a general liability against the city, but inasmuch as we are of the opinion that the court had no jurisdiction, in any event, to enter the judgment prayed for, it will not be necessary to discuss them here.

The circuit court properly dismissed the petition, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*