# Harry S. Mecartney, Appellee, v. City of Chicago, Appellant.

## Gen. No. 20,711.

1. MUNICIPAL CORPORATIONS, § 455*—*when action ex delicto not maintainable for failure to pay condemnation judgment.* An action in tort cannot be maintained by the defendants in a condemnation judgment against a city upon such judgment, upon the theory that the negligence of the city in failing to take steps to collect and pay the amount of the condemnation judgments, created a cause of action in their favor independent of such judgments, where the defendants in such condemnation suit relinquished possession of the property, under agreement with the city, prior to the termination of such suit, and the ordinance under which the improvement was made provided for payment by means of special assessments and general taxation.

2. MANDAMUS, § 76*—*when proper remedy to compel payment of condemnation judgment.* Where a city fails to exercise due diligence to levy and collect taxes and assessments for the payment of judgments rendered in condemnation proceedings instituted under an ordinance authorizing an improvement, which provided for payment by means of special assessments and general taxation, the remedy of the holders of such judgments is by mandamus to compel the performance of the city's duty in that respect.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD
S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court
at the October term, 1914. Reversed. Opinion filed October 5, 1915.

**Statement by the Court.**  This is an appeal from a
judgment of the Circuit Court of Cook county for
$31,208.66, rendered April 25, 1914, against the City of
Chicago in favor of Harry S. Mecartney, plaintiff, in
an action in tort commenced December 13, 1912, and
based upon three certain condemnation judgments en-
tered in said Circuit Court in the year 1894. The dec-
laration consists of four counts,—the first reciting the
recovery of said three judgments, giving credit for
payments made thereon and alleging the city's negli-
gence in failing to make and collect the special assess-
ments to pay said judgments. The other three counts
are merely separate counts on each of the three judg-
ments and contain no matter not included in the first
count. The concluding paragraph of said first count is
as follows:

"In consequence of which negligence and failure of
defendant, the plaintiff has been kept out of his moneys
due upon said judgments, and has been put to great
damages, costs and attorney's fees and other expenses
in attempts to collect said moneys, and in commencing
and prosecuting suits to collect the same, and in com-
mencing the present suit therefor, and has otherwise
been caused and been put to great delay, damages,
costs and fees and other expenses to the amount of,
to-wit, $20,000, exclusive of the amounts due upon said
judgments, and interest thereon. Wherefore, plaintiff
avers that he has been injured and damaged in the sum
of, to-wit, $50,000, and therefore he brings this suit."

The city demurred to the declaration but the demur-
rer was overruled. Subsequently the city filed to the
declaration a lengthy "answer," which is much in the
nature of an answer in chancery. On these pleadings
the parties without objection went to trial. On the
hearing before the court without a jury, opposing

counsel stipulated that practically all the *facts* stated
in the declaration and answer were to be taken as true.
Plaintiff was the only witness sworn, and he testified
as to his persistent efforts to get the city to bring to a
conclusion the special assessment proceedings, and as
to the various collateral suits brought or conducted by
him in his attempts to secure a general judgment
against the city. He further testified that his cash ex-
penditures in said suits for costs, printing and other
expenses had exceeded $1,000, that he had incurred ex-
penses for services of other attorneys in the sum of
$1,000, and that the reasonable value of his own serv-
ices, including the services of his assistants, in the
present case was $2,500, and he claimed upon the trial
that he was entitled to recover said sums as damages.
Plaintiff also claimed upon the trial that he was not
only entitled to recover, as damages, the unpaid por-
tions of said judgments, but also interest thereon, at
the rate of five per cent. per annum, from the date the
city entered into possession of the land condemned
(viz., September 1, 1893), not as interest directly upon
said judgments but as damages for withholding money
that was due. Plaintiff made a computation as to the
interest, in which he applied the partial payments
made upon said judgments, first to the payment of the
accrued interest and the balance to the principal of
said judgments in the same manner as partial pay-
ments are credited on promissory notes. This com-
putation showed that there was due and unpaid on said
judgments on April 25, 1914, the sum of $26,670.66.
The court allowed said sum as damages, and added
thereto the sum of $4,538 as additional damages, to
cover costs and attorneys' fees paid or to be paid by
plaintiff. This latter item is made up of $1,038, costs
paid out; $1,000 attorneys' fees paid in litigations con-
ducted for the purpose of enforcing payment of said
judgments; and $2,500 for attorneys' fees incurred and

to be incurred in the present suit. The court found the defendant guilty and assessed plaintiff's damages at the sum of $31,208.66. The motions of the city for a new trial and in arrest of judgment were overruled and judgment on the finding was entered against the city. Prior to the entry of the finding the plaintiff submitted six propositions of law, all of which the court marked "held," and the city submitted thirty-four propositions of law, eight of which were marked "held" and twenty-six were marked "refused."

On July 24, 1893, the City Council of Chicago passed an ordinance for the widening of South Park avenue from Fifty-fifth street to Fifty-sixth street, and for the taking of certain parcels or strips of land owned by different parties for such purpose. The ordinance provided that the cost of the improvement should be "paid for by a special assessment to be levied upon the property benefited thereby to the amount that the same may be legally assessed therefor, and the remainder of such cost to be paid by general taxation in accordance with article IX" of the Cities and Villages Act of 1872 (J. & A. ¶ 1388). In pursuance of the provisions of said act, on August 29, 1893, a condemnation petition was filed in the Circuit Court of Cook county to acquire the following parcels or strips of land, viz.: (1) The east thirty-seven feet of Lot 13 (except boulevard) in Block 2, Yerby's subdivision, etc.; (2) the east thirty-seven feet of the south one hundred and fifty feet of Lots 15 and 16 in said Block 2; and (3) the east thirty-seven feet of said Lots 15 and 16 (except the south one hundred and fifty feet thereof) in said Block 2. Lots 13 and 15 fronted east on South Park avenue, and Lot 16 was west of and adjoining Lot 15. At this time Nina Thomasson and Gwynn Garnett were the owners of the strip of land first above mentioned and the remaining portion of Lot 13. Harry S. Mecartney, plaintiff herein, was the owner of the strip secondly above mentioned and the remaining portion

of the south one hundred and fifty feet of Lots 15 and 16, and George D. Phelps of the strip thirdly above mentioned and the remaining portion of Lots 15 and 16 (except the south one hundred and fifty feet thereof). Separate jury trials were had to fix the compensation to be paid to the several owners, and at the January term, 1894, one judgment was rendered for $12,025; at the October term, 1894, another judgment was rendered for $4,162.50; and at said October term another judgment was rendered for $3,312.38. These awards for said lands condemned aggregated the sum of $19,499.88. Subsequently Mecartney, by assignments filed of record, purchased all of the rights to compensation for the taking of all of these strips of land. After the filing of said original condemnation petition, to-wit, on September 1, 1893, the city, *with the actual and express consent of the owners of said strips of land* (viz., said Thomasson and Garnett, Mecartney and Phelps), took actual and permanent possession of said strips of land for the purposes of a public street, and the same have been since continuously and exclusively used for such purposes and as a part of said South Park avenue.

To raise the aggregate sum of said awards for said lands condemned, viz., $19,499.88, in accordance with said condemnation ordinance, various supplemental petitions were filed by the city under section 53 of article IX of said Cities and Villages Act (J. & A. ¶ 1443). The first of such supplemental petitions was filed on December 4, 1894. Under this petition an assessment was made and returned for the full amount of said awards and costs, apportioned among the lots and parcels of land alleged to be benefited. A large part of the whole assessment was levied upon the parts of the lots which remained after taking the east thirty-seven feet thereof for the street. Objections were filed by Mecartney and others, which were sustained, and the city dismissed the petition. A second supplemental petition was filed on December 28, 1895. Objections

were also filed by Mecartney and others to this assessment as returned, and on February 4, 1897, said petition was dismissed. On February 20, 1897, the city filed a third supplemental petition, and in July, 1897, the third assessment roll was filed. Prior to this time, on April 1, 1897, the property of Mecartney and Phelps (viz., Lots 15 and 16, except the east thirty-seven feet of Lot 15 taken for the street) had been subdivided, and was then known as Sublots 1 to 8, inclusive, of Edgar M. Snow & Company's subdivision of Lots 16 and 15 (except the east thirty-seven feet of said Lot 15 in Block 2, Yerby's subdivision, etc.). These lots were assessed the aggregate sum of $9,017.64. Various objections were filed to said assessment roll by Mecartney and others, and on April 7, 1898, a trial was had upon said objections, and the jury found said assessment correct as against all the property except said Sublots 1 to 8, inclusive, and reduced the assessment against said lots to the aggregate sum of $6,770. On July 2, 1898, Mecartney's motion for a new trial as to said lots was allowed, but a judgment of confirmation of the assessment was entered as against all the other property assessed. The total amount of the assessment as so confirmed was $12,033.74, and said amount, except $1,885, was subsequently paid over to Mecartney by the city. The item of $1,885 was contested by the owner of the land against which it was assessed, and a judgment of sale was rendered in December, 1902, against said land for said sum of $1,885, which judgment of sale was in June, 1903, affirmed by the Supreme Court (*Bass v. People,* 203 Ill. 206). In the year 1910 said land was sold under said prior judgment and said sum was collected and paid over to Mecartney, making a total sum of $12,033.74 paid him on said condemnation judgments.

On June 22, 1901, the new trial was had as to said Sublots 1 to 8, inclusive. A jury was waived and the court found that the benefits had been determined in

the original condemnation proceedings, and that such determination was *res adjudicata* in said assessment proceedings, and the court sustained the objections of Mecartney and dismissed the petition for said assessment as to said property. In April, 1904, the city sued out a writ of error from the Supreme Court to reverse said judgment, and that court in October, 1905, reversed the judgment and remanded the cause (*City of Chicago v. Mecartney*, 216 Ill. 377). For some unexplained reason no remanding order was filed in the Circuit Court within the statutory period of two years.

No further steps were taken by the city until January 24, 1910. On that day the city council passed an ordinance annulling the assessment theretofore made by the city, and directing the corporation counsel to have a new assessment made. On January 25, 1910, an order was entered in said condemnation proceedings dismissing all supplemental petitions filed therein and vacating all orders entered upon said supplemental petitions, and the city on the same day, by leave of court, filed the fourth and last supplemental petition for a new assessment against all lands benefited by said improvement, and the court thereupon appointed commissioners to spread new assessments. Subsequently the assessment roll was filed, in which roll the property against which the former assessment had been confirmed as above (except the "remainder" of said Lots 15 and 16, or Sublots 1 to 8, inclusive, as subdivided) was reassessed the same amount that had been confirmed against it under said former assessment, but such property was in each instance credited with the same amount on said roll by having the assessment marked "paid." Upon said Sublots 1 to 8, inclusive, the aggregate amount of the assessment was $7,783.60. This amount added to the $12,033.74, paid on the condemnation judgments, was more than sufficient to pay the face of said judgments, $19,499.88. It appears from the assessment roll that

one Frank J. Willoughby was then the owner of Sublots 1 and 2, and that parties other than Mecartney and Phelps were the owners of the other sublots, and that "no dollars" were assessed against the city for public benefits. Objections to this assessment of $7,783.60 were filed by the then owners of said lots, but on June 14, 1910, said assessment was confirmed. The objectors appealed to the Supreme Court of Illinois, which court in April, 1911, affirmed said judgment of confirmation (*City of Chicago v. Willoughby*, 249 Ill. 249). The objectors sued out a writ of error from the Supreme Court of the United States, and in November, 1914 (subsequent to the entry of the judgment in the present case), said writ of error was dismissed by said Supreme Court (*Willoughby v. City of Chicago*, 235 U. S. 45).

In November, 1895 (thirteen months after the last of the three condemnation awards was entered), two assumpsit suits against the City of Chicago were filed in the Circuit Court of Cook county. The plaintiff in one of those suits was the present plaintiff, Harry S. Mecartney, and the plaintiff in the other suit was said George D. Phelps, for use, etc. In October, 1901, a third assumpsit suit, entitled Nina Thomasson and Gwynn Garnett, for use of Harry S. Mecartney, against the City of Chicago, was commenced in said court. In the amended declarations in said three suits it was alleged, in substance, that the city had begun supplemental proceedings to collect the amounts of said awards by special assessment, but had failed to prosecute the same with reasonable diligence and had abandoned said proceedings, whereby it was claimed that a general liability in assumpsit had accrued. The city demurred to the declaration as amended. The demurrers were overruled and, the city electing to stand by the demurrers, judgments aggregating nearly $23,000 were entered in said three suits against the city. From these judgments the city appealed to this

Appellate Court, which court, by decisions rendered in October, 1909, reversed the judgments and remanded the causes with directions to sustain said demurrers (*Mecartney v. City of Chicago,* 150 Ill. App. 275; *Thomasson v. City of Chicago,* 150 Ill. App. 281; *Phelps v. City of Chicago,* 150 Ill. App. 281). In pursuance of the mandate of this court the lower court sustained the demurrers and, plaintiffs electing to stand upon their amended declarations, said suits were dismissed at plaintiff's costs, from which judgments the several plaintiffs appealed to this Appellate Court, and this court, in January, 1913, affirmed said judgments (*Mecartney v. City of Chicago,* 177 Ill. App. 23; *Phelps v. City of Chicago,* 177 Ill. App. 25; *Thomasson v. City of Chicago,* 177 Ill. App. 26). Appeals from the judgments of this court in each of said cases to the Supreme Court were prayed and allowed. In the Supreme Court the three cases were consolidated and heard as one case, and that court in December, 1913, affirmed the judgment of this Appellate Court in each case (*Thomasson v. City of Chicago,* 261 Ill. 131).

In said original condemnation proceeding, commenced August 29, 1893, as aforesaid, Harry S. Mecartney filed an intervening petition on November 17, 1909. This was shortly after the decision of this Appellate Court in the assumpsit suit of *Mecartney v. City of Chicago,* 150 Ill. App. 275. In said petition Mecartney prayed for an absolute and unconditional judgment against the city for the balance remaining unpaid upon said condemnation awards together with interest from September 1, 1893. The petition was amended in January, 1910, and, as amended, it set forth in detail the facts regarding the entry of the condemnation judgments, aggregating $19,499.88, as aforesaid, the taking of possession by the city on September 1, 1893, of the land condemned for the purposes of a street, the subsequent attempts to assess a large part of the amount of said judgments upon the

remainder of the lots after taking the part condemned, the length of time consumed in such attempts and the apparent final abandonment of all efforts to collect. The petition alleged that the city's power to collect had been exhausted, that petitioner's rights had been grossly violated, and that to deny him a judgment in the premises after such a lapse of time and such proceedings, or to require him to wait longer for his money, would amount to taking his property without just compensation and without due process of law, and would be an impairment of petitioner's contract rights, contrary to the provisions of the Constitution of this State and of the United States. The city filed a demurrer, which was overruled, and then filed an answer, denying that the special assessment proceedings had been prosecuted in a negligent manner, and alleging that the same had been brought to trial as speedily as practicable, and further denying that the city had either abandoned its efforts to collect or that its power to collect had been exhausted. The city's answer also set up the proceedings in said three assumpsit suits, and asserted that the decision of this Appellate Court therein (150 Ill. App. 275) was *res adjudicata* of all questions involved. By a supplemental answer filed in July, 1910, the city alleged the further fact that between January and July, 1910, a fourth supplemental proceeding for a special assessment had been prosecuted in which, after a jury trial, a judgment of confirmation was entered against the remaining portions of said Sublots 1 to 8, inclusive, for $7,783.60, from which judgment an appeal had been prosecuted to the Supreme Court. (This appeal was subsequently decided in favor of the city in the case of *City of Chicago v. Willoughby*, 249 Ill. 249, as above mentioned.) The Circuit Court, after hearing the evidence of the facts alleged in said intervening petition and answer, denied and dismissed said petition, and from that order Mecartney appealed to this Ap-

pellate Court, and this court in October, 1912, affirmed the order and judgment of the Circuit Court dismissing said intervening petition (*City of Chicago v. Mecartney,* 172 Ill. App. 586). From the decision of this court an appeal was allowed and perfected to the Supreme Court, which court in October, 1913, affirmed the judgments of the Circuit Court and of this court (*City of Chicago v. Thomasson,* 259 Ill. 322).

PHILLIP J. MCKENNA and HOWARD F. BISHOP, for appellant; JOHN W. BECKWITH, of counsel.

ENOCH J. PRICE, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

By the first proposition of law submitted by the plaintiff and marked "held" by the trial court, the court held, as a matter of law, that the city had been negligent, prior to the bringing of the present action, in performing its duty to levy, collect and pay over such special assessments as it lawfully could to the owners of said condemnation awards for the property taken. By the second proposition of law the court held, as a matter of law, that the plaintiff had proved a valid cause of action against the defendant for *negligence and delay* in paying said awards. By the third proposition the court held that the time which elapsed between the entry of said awards and the beginning of the present action was much more than a reasonable time within which to make payment for the property taken. By the fourth proposition the court held, as a matter of law, that legal interest should be allowed as part of the damages in this case upon said awards from September 1, 1893. By the sixth proposition the court held, as a matter of law, that plaintiff's disbursements for expenses and attorneys' fees properly incurred in attempting to enforce the city's liability

growing out of said awards were proper elements of damages in this case. It was on these theories that the trial court, in this tort action, assessed plaintiff's damages at the sum of $31,208.66, and entered a general judgment against the city in that amount. This sum was made up of the sum of $26,670.66, which according to plaintiff's computation was the amount unpaid on said awards together with interest at the legal rate from September 1, 1893, to April 25, 1914, and the further sum of $4,538, costs and attorneys' fees paid or to be paid by plaintiff. Among the propositions of law submitted by the city the court held, as matters of law, by the fifth proposition, that the said awards were not judgments against the city directly, but were to be paid strictly in accordance with the terms of the original condemnation ordinance, and in accordance with the provisions of article IX of the Cities and Villages Act of 1872 (J. & A. ¶ 1388) ; by the fourteenth proposition, that the recovery of fees or costs is a statutory question, and must be governed by the terms of the statute under which the proceeding is brought; by the twenty-sixth proposition, that no money or property of this plaintiff has been wrongfully obtained by the city; and by the twenty-seventh proposition, that no money or property of this plaintiff has been illegally withheld by the city.

By the decisions in *Mecartney v. City of Chicago,* 150 Ill. App. 275, in *Mecartney v. City of Chicago,* 177 Ill. App. 23, and in *Thomasson v. City of Chicago,* 261 Ill. 131, it was decided that plaintiff could not recover the balance due on said awards in an action in assumpsit. And by the decisions in *City of Chicago v. Mecartney,* 172 Ill App. 586, and in *City of Chicago v. Thomasson,* 259 Ill. 322, it was decided that, on the intervening petition filed by plaintiff in the condemnation proceedings, the court had no jurisdiction to enter an absolute and unconditional judgment against the city for the balance of said awards with interest.

The ordinance passed by the City Council of Chicago on July 24, 1893, for the widening of South Park avenue between Fifty-fifth and Fifty-sixth streets and for the taking of the strips of land mentioned for that purpose, provided that the cost of the improvement should be "paid for by a special assessment to be levied upon the property benefited thereby to the amount that the same may be legally assessed therefor, and the remainder of such cost to be paid by general taxation in accordance with article IX" of the Cities and Villages Act of 1872 (J. & A. ¶ 1388). After the passage of said ordinance, and in pursuance of the provisions of said act, on August 29, 1893, the city filed a condemnation petition in the Circuit Court of Cook county to acquire said strips of land. Three days after the filing of said petition, to-wit, on September 1, 1893, the city, with the *actual and express consent* of the then owners of said strips of land (namely, the plaintiff in the present case, and Thomasson and Garnett and Phelps) took actual and permanent possession of said strips of land for the purposes of a public street, and the same have been since continuously and exclusively used for such purposes and as a part of said South Park avenue. At the January term, 1894, of the said court, compensation was awarded to the owners of one strip of land taken in the sum of $12,025; at the October term, 1894, to the owner of another strip taken in the sum of $4,162.50; and at said October term to the owner of the third strip taken in the sum of $3,312.38. These awards aggregated the sum of $19,499.88. Thereafter the plaintiff in the present case became the assignee of all of said judgments and entitled to receive said aggregate sum. To raise said sum, in accordance with said ordinance, the city filed from time to time four supplemental petitions under section 53 of article IX of said Act (J. & A. ¶ 1443), with the results as above outlined in the "statement of the case." It appears that the plaintiff, Mecartney,

as assignee of said judgments, has had paid to him by the city on said judgments the total sum of $12,033.74, or nearly two-thirds of the aggregate amount of said judgments or awards. It further appears that under the fourth supplemental petition, filed by the city on January 25, 1910, an assessment was levied on certain sublots, mentioned in said statement of the case, in the aggregate amount of $7,783.60, for the purpose of paying the balance of said awards; that objections to the assessment were filed; that on June 14, 1910, the assessment was confirmed; that the objectors appealed to the Supreme Court of this State, which court in April, 1911, affirmed said judgment of confirmation (*City of Chicago v. Willoughby*, 249 Ill. 249); that said objectors by writ of error took the case to the Supreme Court of the United States; and that in November, 1914, said writ of error was by that court dismissed (*Willoughby v. City of Chicago*, 235 U. S. 45).

Section 1 of said article IX of the Cities and Villages Act of 1872 (J. & A. ¶ 1388) provides "that the corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall by ordinance prescribe." Section 2 (J. & A. ¶ 1389) provides that "when any such city or village shall, by ordinance, provide for the making of any local improvement, it shall, by the same ordinance, prescribe whether the same shall be made by special assessment or by special taxation of contiguous property, or general taxation, or both." In the above cited case of *City of Chicago v. Thomasson*, 259 Ill. 322, our Supreme Court held (p. 327) that, at the time when said condemnation petition was filed, it was only under the provisions of said article IX of said Act that the city might condemn property for a local improvement; that said article provided for a purely statutory proceeding and was a complete code in itself; that

under the statute payment might be made in any one of the modes provided, but that the adoption of any one or more of these modes by a local improvement ordinance excluded the idea of payment in any other manner. The court said (p. 328):

"We are unable to find in this act any authority for the entry of such a judgment as is prayed for by the petition under consideration. By voluntarily delivering possession of the strip sought to be condemned by the city, the owners of the lots in question established a relationship to the city in reference to this proceeding that was not contemplated by the statute, and thereby deprived themselves to some extent of the protection vouchsafed landowners by this statute in the matter of securing the payment of the damages awarded them."

The court further said (p. 330, italics ours):

"Having *consented* that the city should immediately enter upon their property and take possession of and damage the same, the appellant and the other property owners *voluntarily waived* their right to demand their award for damages before the land could be taken and the city thereupon acquired a vested right in the property. The owners, as is said in the *Barbian case* (80 Ill. 482) also acquired a vested right in the compensation, and the rights of both parties thereby became absolute and irrevocable except by common consent. The liability of the city, however, as to the manner in which payment for damages should be made *was not changed*. The *agreement* between the property owners and the city, whereby the city at once acquired possession and the right to take the property could not and did not change the terms and provisions of the original ordinance, which provided that the cost of the improvement should be paid for by special assessment to be levied upon the property benefited thereby to the amount that the same might be legally assessed therefor, the remainder to be paid by general taxation. While the property owners, on delivery of possession to the city, immediately acquired a vested right in their compensation, they did not acquire a right to

have that compensation provided for and paid to them *in any other manner than that specified in the ordinance.* At the time possession was given the ordinance authorizing the improvement had been passed. Its terms were known and the condemnation proceedings therein provided for had been begun. By thus delivering possession to the city the property owners placed themselves without the provisions of the statute. * * * They were bound by the provisions of the ordinance, and, although out of possession, *must await payment according to its term.* However, they were not left remediless. They had at hand the means to *compel* the city to perform any duty legally devolving upon it. If the city failed to exercise due diligence in making the assessment against the property specially benefited, it could, after demand, be compelled to do so by *mandamus.* * * * That the city has failed to exercise due diligence in proceeding to collect assessments with which to pay for the damages done in the taking of this property cannot be denied. For years at a time no steps were taken or attempted to be taken in this proceeding. This situation may be partially accounted for by the fact that appellant was all the time contending that his lots * * * (being the only ones specially benefited which had not been assessed) were not liable for special assessment in this proceeding, and it is possible that for this reason he did not desire to proceed by *mandamus.*"

Our conclusion is that, under the facts disclosed and because of the reasoning and holdings of our Supreme Court in *City of Chicago v. Thomasson, supra,* the trial court erred in entering against the city the general judgment appealed from. In our opinion the court should have dismissed the suit. The questions as to the allowance of interest, costs and attorneys' fees, much discussed in the briefs of counsel, need not therefore be considered.

The judgment of the Circuit Court of Cook county is reversed.

*Reversed.*